UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

UNITED STATES OF AMERICA,

    v.                                                      **DECISION AND ORDER**
                                                             19-CR-36-RJA

TODD LARABA,

                    Defendant.

———————————————————

Defendant Todd Laraba is charged in a three-count Indictment (Dkt. No. 1) with Hobbs Act Conspiracy, in violation of 18 U.S.C. § 1951(a) (Count 1); Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) and § 2 (Count 2); and Marijuana Conspiracy, in violation of 21 U.S.C. § 846 (Count 3). Pending before the Court are Laraba's objections (Dkt. No. 161) to Judge Roemer's Report and Recommendation ("R&R") (Dkt. No. 156), which recommends that the Court deny Laraba's motion (Dkt. No. 104) to exclude the testimony of the Government's DNA expert as unqualified and/or unreliable—in essence, an *in limine* ruling precluding that testimony at trial—and alternatively, for an evidentiary hearing pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) on the admissibility of the DNA expert's testimony. For the reasons set forth below and in the R&R, Laraba's motion is DENIED, Laraba's objections are REJECTED, and the R&R is ADOPTED.

## BACKGROUND AND PROCEDURAL HISTORY

In relation to the robbery charges, the Government claims that on September 28, 2017, Laraba and another individual participated in a home-invasion style robbery at the residence of two elderly victims in Tonawanda, New York. According to the Government, Laraba and the other perpetrator (who were both wearing masks) zip tied the victims' hands and ankles together and duct-taped the victims' eyes and mouths shut—and proceeded to steal a lockbox full of cash ($60,000) that had been hidden in the rafters of the victims' attic. The Town of Tonawanda Police Department recovered zip ties and pieces of duct tape from the robbed residence, which were later analyzed in 2017 by the Government's DNA expert, Forensic Biologist and Analyst Denise Bantle from the Erie County Central Police Services Forensic Laboratory ("CPS Lab"). Bantle issued six reports establishing a high probability that Laraba's DNA was on these recovered items.

In August 2021, the CPS Lab became aware of a reporting error made by Bantle in an unrelated state criminal case prosecuted by the Erie County District Attorney's Office. The Government then asked the CPS Lab to review Bantle's DNA reports from cases the U.S. Attorney's Office was prosecuting in this District, including in the instant case. The CPS Lab separately conducted an audit/ internal investigation into Bantle's prior work. In short, a total of eight reporting errors by Bantle were eventually discovered, although none were related to Laraba's case.

Jury selection before this Court was originally scheduled for December 7, 2021. Before that date, the defense filed three successive motions to compel DNA-related discovery as to Bantle's DNA reporting errors. At a status conference held

on November 22, 2021, the Court determined this case was not trial-ready and recommitted the case to Magistrate Judge Roemer to resolve the DNA-disclosure motions, among other issues. The motions to compel were resolved before Judge Roemer, but Laraba also moved for a *Daubert* hearing and/or for the Court to either (a) exclude Bantle's expert testimony at trial as unreliable or (b) find her unqualified to testify as an expert due to the nature of her reporting errors. The motion for a *Daubert* hearing led to further briefing and argument before Judge Roemer.

On February 14, 2023, Magistrate Judge Roemer filed a comprehensive R&R, recommending that this Court deny Laraba's motion for a *Daubert* hearing and motion to exclude Bantle's testimony. Laraba filed objections (Dkt. No. 161) to the R&R, the Government filed a response in opposition (Dkt. No. 162), and Laraba filed reply papers (Dkt. No. 165). The Court heard oral argument on the objections on April 4, 2023, at which time the Court reserved decision. On June 27, 2023, the Government filed an affidavit (Dkt. No. 172) in response to the Court's Text Order (Dkt. No. 171) inquiring about Bantle's results from proficiency examinations taken in 2022 and the Government's compliance with discovery orders and its disclosure obligations, which Laraba had raised in his papers before this Court.

## **DISCUSSION**

Laraba's primary argument is that Bantle's history of sloppy and inaccurate DNA reporting in other cases renders her conclusions and methodology in the instant case inherently unqualified, unreliable, untrustworthy, and incredible, and therefore the Court, as a gatekeeper, must preclude her from testifying at trial. At a minimum, Laraba argues, the Court should conduct a *Daubert* hearing. He objects

to the R&R, asserting that Judge Roemer erred because he "overlooked the role of courts as gatekeepers" and simply concluded Laraba would have the opportunity to cross-examine Bantle at trial and hire his own expert to challenge Bantle's conclusions.  The Government maintains its position that the previous errors go to the weight of Bantle's testimony, not its admissibility.

The admissibility of expert testimony is evaluated under Federal Rule of Evidence 702, which requires the district court to make several determinations prior to allowing expert testimony: whether (1) the witness is qualified to be an expert, (2) the proffered opinion is based upon reliable data and methodology, and (3) the expert's testimony on a particular issue will assist the trier of fact.  *See Nimely v. City of New York*, 414 F.3d 181, 396-97 (2d Cir. 2005).  "While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied . . ., the district court is the ultimate 'gatekeeper.'" *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007), citing Fed. R. Evid. 104(a).  As part of its gatekeeping function, a trial court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

I.      **Qualifications**

Laraba objects to Bantle being qualified as an expert.  As such, this Court must first determine the threshold question of whether she is "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  "Courts in the Second Circuit liberally construe the expert qualifications requirement, and generally will not exclude expert testimony provided the expert has educational and

4

experiential qualifications in a general field closely related to the subject matter in question."  *I.M. v. United States*, 362 F. Supp. 3d 161, 192 (S.D.N.Y. 2019).

Magistrate Judge Roemer reviewed the Government's expert disclosures and assessed both the totality of Bantle's background, training, and experience, and the proposed subject matter of her anticipated testimony, before recommending that the Court find her qualified to testify as an expert in the field of forensic DNA analysis without a hearing.  *See* Dkt. No. 156, pp. 12-13.  Laraba does not challenge Bantle's professional credentials.

Rather, Laraba argues Judge Roemer "overemphasiz[ed]" Bantle's credentials and performance on bi-annual proficiency exams, while failing to account for her "recent pattern of errors" that he argues bear on her qualifications to the extent that her testimony must be precluded.  Laraba relies on *United States v. Cloud*, 576 F. Supp. 3d 827 (E.D. Wa. 2021), which is indisputably not binding precedent, in support of the latter argument.  In addition to *Cloud* being out-of-Circuit, Judge Roemer found that opinion unpersuasive and distinguishable, and declined to follow it.

In *Cloud*, after conducting a hearing on the defendant's motion to exclude or limit the testimony of the Government's fingerprint analysis expert, the Eastern District of Washington declined to qualify her as an expert due to a "series of errors in her work—some significant and some less so—which b[ore] on her qualifications."  *Cloud*, 576 F. Supp. 3d at 845-47.  As aptly remarked on by Judge Roemer, in doing so, the district court in *Cloud* "appeared to place the most significance on the proffered expert's difficulties in passing proficiency exams."  Dkt. No. 156, p. 17; *see*

*Cloud*, 576 F. Supp. 3d at 846 ("*Extremely telling*, in the Fall of 2020, [the Government's expert] failed her annual proficiency test . . .") (emphasis added), 847 ("[T]he Court cannot in good conscience qualify [the Government's expert] as an expert with the requisite skill to perform fingerprint comparisons when her two most recent proficiency exams either contained an error or required a significant amount of assistance from her supervisor."). Among other differentiating circumstances between this case and *Cloud*, Judge Roemer remarked that Bantle "never failed a proficiency test[.]"

Before this Court, Laraba questions whether Bantle has indeed passed every bi-annual proficiency test she has taken while working at the CPS Lab, because while the CPS Lab produced the results for all exams Bantle took through 2021, neither of her two exams from 2022 had been provided to the defense.[1] Thus, Laraba argues the Court cannot rely on this factor in distinguishing this case from *Cloud*. Because the Government did not directly respond to Laraba's allegation that it did not turn over those test results (or comment on whether it was required to do so), the Court ordered a supplemental filing from the Government.

The Court finds that, based on the Government's representations, and in conjunction with the Court's review of the record and the exhibits attached to the Government's supplemental filing, Bantle has passed all her proficiency

---

[1] In a letter dated December 21, 2022 (Dkt. No. 153-3), DNA Technical Leader Thomas Grill from the CPS Lab relayed to the Assistant U.S. Attorney assigned to this matter that "DNA analysts are required to complete two proficiency exams every year," and that Bantle has "successfully adhered to this requirement," having "passed every proficiency exam" assigned to her at the CPS Lab.

examinations taken at the CPS Lab, to date.  See Dkt. Nos. 172-1 (Mar. 2022 exam results), 172-2 (Sept. 2022 exam results), 172-3 (Mar. 2023 exam results).[2]  As such, the Court wholeheartedly agrees with Judge Roemer's analysis of *Cloud*.  Assuming, *arguendo*, *Cloud* was controlling or followed by other district courts, the Court finds it nevertheless factually dissimilar.

Laraba contends that he did not originally cite *Cloud* for the proposition that a pattern of mistakes in other cases may disqualify an expert, as interpreted by the Magistrate Judge, but rather to support his position that a *Daubert* hearing is warranted here.  Regardless of Laraba's intentions for citing *Cloud*, the Eastern District of Washington did not explain its reasoning for holding a hearing, but simply noted in the opinion that it did hold one.  See *Cloud*, 576 F. Supp. 3d at 833.  In addition, a district court's decision whether to hold a separate, formal *Daubert* hearing is an exercise of its discretion, and tied to the circumstances of the particular case.  See generally *United States v. Romano*, 794 F.3d 317, 330-31 (2d Cir. 2015) (the Second Circuit reviews the admission of expert testimony, including *how* the district court made that determination, under an abuse of discretion standard).

The Court thus rejects Laraba's objections concerning Bantle's qualifications, his reliance on *Cloud*, and his request for a *Daubert* hearing to test Bantle's

---

[2] In any event, the Government was not required to produce continuing disclosures of Bantle's test results—rather, it complied with its disclosure obligations under Fed. R. Crim. P. 16(a)(1)(G)(iii), as well as orders issued by this Court and Judge Roemer.  The Court also questions whether this issue was even properly raised in Laraba's objections, as the Government notes it was not raised before the Magistrate Judge.  See L. R. Crim. P. 59(c)(3); Dkt. No. 156, p. 18 ("The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance.").

qualifications.  The Court moves on to the question of whether Bantle's testimony "rests on a reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597.

## II.     <u>Relevance and Reliability</u>

A witness who is qualified as an expert may testify before the jury if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue."  Fed. R. Evid. 702(a).  However, when an expert's testimony is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help . . . the testimony is properly excludable."  *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991).  Here, Judge Roemer concluded Bantle's testimony about her DNA testing on three recovered items from the robbery, finding a high probability Laraba's DNA was on each of those items, likely meets the relevance standard.  Laraba's objections center not on the relevance of Bantle's proposed testimony, but on reliability.

"In its 'gatekeeper role,' a court must make 'a preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'"  *United States v. Pettway*, 12-CR-103S (1), (2), 2016 U.S. Dist. LEXIS 145976, *6 (W.D.N.Y. Oct. 21, 2016), quoting *Daubert*, 509 U.S. at 592-93.  "*Daubert* enumerated a list of factors that, while not constituting a 'definitive checklist or test,' a district court might consider in evaluating whether a proffered expert opinion has the required indicia of scientific reliability: whether a theory or technique had been and could be tested, whether it had been subjected to peer

8

review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation." *Nimely*, 414 F.3d at 396, citing *Daubert*, 509 U.S. at 593-94.  Beyond "these criteria for testing an expert's methodology, the Supreme Court has also stated that reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions." *Nimely*, 414 F.3d at 396.  "The gatekeeping function requires the court to ascertain the reliability of an expert's methodology but does not necessarily require that a separate hearing be held in order to do so."  *United States v. Gordon*, 1:20-CR-00049-RJA-MJR, 2022 U.S. Dist. LEXIS 238133, *15-16 (W.D.N.Y. Sept. 23, 2022), citing *United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007).

Laraba concedes that he is not challenging the validity of DNA evidence in general.[3]  Rather, he challenges Judge Roemer's finding that Bantle's reporting errors in other cases and the CPS Lab's internal investigation of her work would go to the weight of her testimony and not its admissibility.  Judge Roemer recommends that—subject to this Court's pretrial rulings—Laraba be permitted to explore these subjects during cross-examination and to test Bantle's conclusions with his own expert.[4]

---

[3] *See United States v. Howard*, 639 Fed. Appx. 686, 691 (2d Cir. 2016) (summary order) ("We regularly approve the reliability of DNA profiling.") citing *United States v. Jakobetz*, 955 F.2d 786, 797-98 (2d Cir. 1992).

[4] In other words, Judge Roemer notes that the extent and scope of the defense's ability to cross-examine Bantle about her reporting errors in other cases and the internal investigation of her work would be determined by this Court at the time of trial.

Laraba contends that Bantle's history of errors and repeated violations of laboratory policies and procedures raises a question of law or threshold issue on the reliability of her expert opinion, for the Court to resolve after holding a hearing, and not merely a factual dispute to be decided by the jury. Laraba elaborates, "the admissibility determination evaluates whether the expert *applied a reliable methodology* to derive the evidence that forms the subject matter of [his or her] testimony at trial, whereas the credibility determination evaluates whether the expert *reliably applied* that methodology." Dkt. No. 165, p. 3 (emphases in original). In other words, he argues a *Daubert* hearing is necessary to get to the bottom of whether Bantle's failure to follow or properly apply "established quality control measures" renders her conclusions scientifically invalid.

Judge Roemer found that Bantle's prior errors (though not insignificant), which may demonstrate a "failure by Bantle to consistently follow CPS Lab policy," are not egregious enough to conduct a hearing.

Laraba, however, argues that the Court is required to initially evaluate whether Bantle properly followed the protocols of DNA profiling, relying upon *United States v. Davis*, 40 F.3d 1069, 1074-75 (10th Cir. 1994) ("Although it is a matter of debate among the circuits, the Eighth Circuit understands *Daubert*'s second prong in the DNA context to require a district court to make a preliminary finding that the offering party adhered to protocol."), citing *United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir. 1993) ("The court should require the testifying expert to provide affidavits attesting that he properly performed the protocols involved in DNA profiling. If the opponent of the evidence challenges the application of the protocols

10

in a particular case, the district court must determine whether the expert erred in applying the protocols, and if so, whether such error so infected the procedure as to make the results unreliable."). The Court did not find any Second Circuit case law that appears to stand for the same proposition as that in Martinez.[5]

The Court agrees with Judge Roemer's reasoning that the foregoing presents a weight issue, not one of admissibility. See United States v. Acquest Transit LLC, 09-CV-00055S(F), 2018 WL 3861612, 2018 U.S. Dist. LEXIS 137435, *38 (W.D.N.Y. Aug. 14, 2018) ("Disputes as to . . . faults in the expert's use of scientific methods and procedures . . . go not to the opinion's admissibility, but to its weight."); United States v. Rounds, 10-CR-239S, 09-CV-00055S(F), 2015 WL 6643986, 2015 U.S. Dist. LEXIS 145540, *6 (W.D.N.Y. Oct. 26, 2015) ("[C]hallenges to reliability and assertions of factual error in the application of a given methodology go to the weight of the evidence, not to admissibility."); United States v. Gladden, 11CR119S, 2012 U.S. Dist. LEXIS 144720, *5 (W.D.N.Y. Sept. 20, 2012) ("Here, the defense does not challenge the viability of the scientific method used by the Lab, but instead challenges the conclusions rendered. Such challenges go to the weight of the opinion and not to its admissibility."), affirmed at 11-CR-119-TJM-HBS, 2013 WL 1916125, 2013 U.S. Dist. LEXIS 65788, *24-27 (W.D.N.Y. May 8, 2013); United

---

[5] The Court finds another out-of-Circuit case relied upon by Laraba inapplicable here. See Elcock v. Kmart Corp., 233 F.3d 734, 745-50 (3d Cir. 2000) (remanding for a Daubert hearing to afford a "fuller assessment of [the vocational rehabilitation expert]'s analytical processes" as "a necessary predicate for a proper determination as to the reliability of [the expert's methods]," where application of the Daubert factors weighed against the reliability of the expert's methods, which included an "admittedly novel synthesis of two methodologies" while offering "no explanation as to how his hybrid methodology could be rationally derived from the application of two accepted techniques"—a method that, in any event, "appear[ed] unreliable on its face").

*States v. Cuff*, 37 F. Supp. 2d 279, 280, 283 (S.D.N.Y. 1999) (rejecting the defendant's motion *in limine* to exclude the Government's DNA evidence, as "[t]he initial testing of an erroneously selected sample does not mean that every step thereafter is so inherently unreliable as to make the results of later testing inadmissible as a matter of law.  The weight to be attached to those later results is for the jury to decide."); *see also United States v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994) ("The impact of imperfectly conducted laboratory procedures might . . . be approached more properly as an issue going not to the admissibility, but to the weight of the DNA profiling evidence.").

Exclusion of Bantle's testimony is not warranted, and neither is a *Daubert* hearing.  Rather, Laraba will have an ample opportunity to cross-examine Bantle at trial, and to use his own DNA expert to challenge Bantle's testimony.

## III.     Federal Rule of Evidence 403

Even if all requirements of Rule 702 are met, the district court must remain mindful of other rules of evidence that apply, including the balancing test of Rule 403.  Under that rule, testimony may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," a "judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."  *Daubert*, 509 U.S. at 595 (internal quotation marks and citation omitted).

Laraba states that the questions he seeks to ask Bantle, including about her compliance or lack thereof with the CPS Lab's policies and procedures, are "technical and complex," and will possibly be time-consuming and confusing or misleading to the jury. Any Rule 403 analysis regarding Bantle's testimony and the extent of her cross-examination will be later addressed by the Court in resolving any motion *in limine* brought by either party.

## CONCLUSION

After *de novo* review pursuant to 28 U.S.C. § 636(b)(1), and for the reasons stated by Magistrate Judge Roemer in his R&R (Dkt. No. 156) and those set forth in the instant Decision and Order, Laraba's motion (Dkt. No. 104) to preclude the testimony of the Government's DNA expert at trial is DENIED, as well as his alternative request for a *Daubert* hearing, and the Court hereby ADOPTS Judge Roemer's well-reasoned and thorough R&R.

The trial shall proceed as previously scheduled with jury selection on August 15, 2023 at 9:30 a.m., with the schedule for pretrial submissions, the Final Pretrial Conference, and the Final Status Conference as set forth in the Court's Final Pretrial Order (Dkt. No. 170) issued on June 21, 2023.

**IT IS SO ORDERED.**

                                           *s/Richard J. Arcara*
                                           HONORABLE RICHARD J. ARCARA
                                           UNITED STATES DISTRICT COURT

Dated:   July 5, 2023
          Buffalo, New York